# Exhibit B

C 66      629

## OTIS ELEVATOR COMPANY

### ILLINOIS

### CONSENT  -  OHIO

---

I, T. M. LOGAN, do hereby certify that I am the duly elected, qualified and acting Assistant Secretary of Otis Elevator Company, a corporation duly organized under the laws of the State of Illinois and authorized to do business in the State of Ohio; that at a special meeting of the Board of Directors of said corporation, duly held according to law on December 2, 1937, the following resolution was unanimously adopted:

> "RESOLVED, That this corporation hereby consents to the qualification of Otis Elevator Company, a New Jersey corporation, as a foreign corporation in the States of:  Illinois, Indiana, Iowa, Kentucky, Michigan, Minnesota, Nebraska, North Dakota, Ohio, South Dakota, Wisconsin, Wyoming and Utah; and the officers of this corporation are hereby authorized and directed to furnish evidence of this consent to the proper authorities in said several States, as required by each of them."

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the said corporation, this 15th day of December, 1937.

_____
Assistant Secretary.

C-66    620

Page 374    Line 23

Number 172-616

# APPLICATION
# FOR LICENSE

Under Foreign Corporation Act
of Ohio

of

OTIS ELEVATOR COMPANY

Incorporated under the laws of

New Jersey

Filed in the office of the Secretary of State,
Columbus, Ohio, on the 31 day of

193   and recorded

in Volume   Page 290   of
the Records of Foreign Corporations.

Secretary of State.

APPLICATION FEES

Permanent License - - $ 50.00
Temporary License - - $100.00

Firms & Strousky
Continental Illinois Bank Bldg
Chicago

C 66      621      STATE OF OHIO

## APPLICATION FOR LICENSE
Under Ohio Foreign Corporation Act

TO THE SECRETARY OF STATE,
    COLUMBUS, OHIO.

...................OTIS ELEVATOR COMPANY................., a foreign corporation, desiring to transact business in Ohio, pursuant to the provisions of Sections 8625-1 et seq., General Code of Ohio, does hereby certify as follows:

**FIRST.**    Its corporate name is.............OTIS ELEVATOR COMPANY...........

**SECOND.**    It is a corporation organized under the laws of............New Jersey...........

**THIRD.**    The complete address of its principal office outside the State of Ohio is...........
...........260 - Eleventh Avenue, New York, New York...........

**FOURTH.**    The name of the county and city, village or township in which its principal office within this state is to be located is...........1375 - E. Sixth Street, Cleveland...........
...........Cuyahoga County...........

**FIFTH.**    It hereby constitutes and appoints...........O. B. Hagesfeld..........., a resident of the county wherein such principal Ohio office is to be located, as its agent upon whom service of process may be had in the State of Ohio. The complete residence address of such person is...........
...........656 - Ruple Road, Berea...........Cuyahoga County...........

**SIXTH.**    It hereby consents irrevocably to the service of process on such person and his successors as long as the authority of such agents shall continue as provided by the Ohio Foreign Corporation Act, and to service of process on the Secretary of State of Ohio in the event such person or persons cannot be found or in any of the other events whereby such service is authorized by the Ohio Foreign Corporation Act.

**SEVENTH.**    The purpose of the corporation is (short summary) To manufacture, erect, build, furnish, construct, repair, maintain, service, buy, sell and in general to deal in and deal with elevators, escalators and all kinds of hoisting machinery, and accessories thereto.

**EIGHTH.**    This application is made, is not made. (strike out words not applicable) to enable the corporation to prosecute or defend an action or suit the cause of which arose prior to this application.

**NINTH.**    The approximate date upon which the corporation began transacting business in Ohio is ...........to be January 1, 1938,...........

**TENTH.**    This application is made to secure a temporary, permanent (strike out word not applicable) license.

**ELEVENTH:**    THERE IS HEREWITH SUBMITTED A COPY OF THE APPLICANT'S ARTICLES OF INCORPORATION, INCLUDING ALL AMENDMENTS THERETO, CERTIFIED BY THE PROPER OFFICIAL OF THE STATE UNDER THE LAWS OF WHICH THE APPLICANT IS ORGANIZED.

IN WITNESS WHEREOF, said...........OTIS ELEVATOR COMPANY...........has caused this application to be executed by an executive officer duly authorized in the premises, this...15th...
day of...........December..........., 193..7...

...........OTIS ELEVATOR COMPANY...........

By..........................

(Title)...........President...........

STATE OF...........New York........... 
}
COUNTY OF...........New York........... }  L. S.

...........J. T. Van Alstyne..........., being duly sworn, says that he is
...........President........... of the applicant and that the statements foregoing are true and correct according to his best knowledge and belief.

...........President

Sworn to before me and subscribed in my presence this...15th...day of...December..........., 193..7...

...........
*Notary Public.*

C 66     622

AMENDED
CERTIFICATE OF INCORPORATION
OF
OTIS ELEVATOR COMPANY


FIRST:   The name of the Corporation is
"OTIS ELEVATOR COMPANY".

SECOND: The location of the principal office of this
Corporation, in the State of New Jersey, is at No. 15 Exchange Place,
Jersey City, Hudson County, and the name of the agent therein and in
charge thereof, upon whom process against this Corporation may be served,
is The Corporation Trust Company.

THIRD: That the objects for which and for each of which
this Company is formed are to do any or all of the things herein set
forth to the same extent as natural persons might or could do, and in
any part of the world, as principals, agents, contractors, trustees or
otherwise; and in furtherance, and not in limitation, of the general
powers conferred by the laws of the State of New Jersey, it is hereby
expressly provided that the Company shall have also the following powers:

(1)   To manufacture, erect, build, furnish, equip, construct,
repair, maintain, operate, buy, sell, and in general to utilize and deal
in and deal with elevators and all kinds of hoisting machinery, including
the acquisition by purchase, manufacture or otherwise of all materials,
supplies, machinery and other articles necessary or convenient for use in
connection with and in carrying on the business herein mentioned, or any
part thereof.

(2)   To manufacture, purchase or otherwise acquire, hold, own,
mortgage, sell, assign and transfer, invest, trade, deal in and deal with
goods, wares and merchandise and property of every class and description,
including any and all kinds of engines, dynamos, generators, pumps, and
any and all kinds of machinery, any and all kinds of implements or articles
of manufacture, and any and all kinds of mechanical apparatus.

(3)   To the same extent as natural persons might or could do, to
purchase or otherwise acquire, to hold, own, to mortgage, sell, convey or
otherwise dispose of, without limit as to amount, within or without the
State of New Jersey, real estate and real property of every class and
description, and as well to purchase, lease or otherwise acquire and hold
lands, buildings and other property, real and personal, in the State of New
Jersey, or in any other State or Territory of the United States, or else-
where in the world, for the erection, establishment or operation of a manu-
factory or manufactories and workshops with suitable plant, engines, ma-
chinery and all other things appurtenant thereto, and of offices, salesrooms
or other necessary plant, with a view to manufacture, purchase, sell or deal
in any or all of the manufactures named in this certificate.

C 66    623

(4) To acquire the good-will, rights and property of any kind, and to undertake the whole or any part of the assets and liabilities of any person, firm, association or corporation and to pay for the same in cash, stock of this Company, bonds or otherwise.

(5) To apply for, obtain, register, purchase, lease or otherwise acquire, and to hold, own, use, operate, introduce and to sell, assign or otherwise dispose of, any and all trade-marks, trade-names and distinctive marks, and all inventions, improvements and processes used in connection with or secured under Letters Patent of the United States or elsewhere, or otherwise; and to use, exercise, develop, grant licenses in respect of, or otherwise turn to account, any such trade-marks, patents, licenses, concessions, processes and the like, or any such property, rights and information so acquired, and with a view to the working and development of the same to carry on any business, whether manufacturing or otherwise, which the Company may think calculated directly or indirectly to effectuate these objects.

(6) To draw, make, accept, endorse, discount, execute and issue promissory notes, bills of exchange, warrants, bonds, debentures and other negotiable or transferable instruments without limit as to amount.

(7) To make and enter into contracts of every sort and kind with any individual, firm, association, corporation, private, public or municipal, and with the Government of the United States, or any State, Territory or Colony thereof.

(8) To do all and everything necessary, suitable or proper for the accomplishment of any of the purposes or attainment of any of the objects hereinbefore enumerated, or which shall at any time appear conducive or expedient for the protection or benefit of the Company as holders of or interested in any such properties mentioned or referred to herein or otherwise, and in general to engage in any and all lawful business whatever, necessary or convenient.

It is the intention that the objects specified in this Third paragraph shall, except where otherwise expressed in said paragraph, be nowise limited or restricted by reference to, or inference from, the terms of any other clause of this or any other paragraph in this charter, but that the objects specified in each of the clauses of this paragraph shall be regarded as independent objects.

FOURTH: The amount of the total authorized capital stock of the corporation is two million, five hundred and sixty-five thousand (2,565,000) shares, of which sixty-five thousand (65,000) shares are preferred stock of the par value of One hundred dollars ($100) each, and two million, five hundred thousand (2,500,000) shares are common stock without par value. The amount of capital stock with which this corporation will commence business is fifty (50) shares of preferred stock of the par value of One hundred dollars ($100) each and four hundred (400) shares of common stock without par value.

C 66    624

Holders of preferred stock are entitled to receive, when and as declared by the Board of Directors, cumulative dividends at the rate of six per cent (6%) per annum of par value, and no more, payable semi-annually or quarterly on such date or dates, as the Board of Directors may from time to time determine. Dividends on the preferred stock are cumulative from April 1, 1930, to the extent not paid, whether or not earned, and no dividend shall be declared or paid on the common stock unless and until all accrued and unpaid dividends on the preferred stock shall have been declared and paid or funds set apart for the payment thereof. Upon any dissolution or liquidation of the corporation, or upon any distribution of its capital assets, holders of the preferred stock shall be entitled to receive and to paid One hundred dollars ($100) for each share of preferred stock held, plus an amount equal to all accrued and unpaid dividends thereon to the date of payment thereof, before any distribution or payment shall be made to holders of the common stock. Save and except as aforesaid the preferred stock shall not be entitled to participate in the earnings or assets of the corporation.

Each share of common stock, without par value, shall be equal to every other share of said common stock and, subject to the prior rights of the preferred stock, shall be entitled to share equally on all distributions of earnings and assets of the corporation. After all accrued dividends on the preferred stock shall have been declared and paid, or funds set apart for the payment thereof, the holders of common stock shall be entitled to receive dividends, at such rates and at such times as may be determined by the Board of Directors of the corporation. Upon the dissolution or liquidation of the corporation, or upon any distribution of its capital assets, subject to the prior rights of the preferred stock, all the remaining assets of the corporation shall be distributed ratably among the holders of the common stock.

At all meetings of the stockholders each stockholder shall be entitled to one vote, in person or by proxy, for each share of preferred and/or common stock held by him.

Common stock of the corporation, authorized to be issued, may be issued and disposed of, from time to time, for such purposes, in such amounts, in such manner, and for such considerations, as may be determined by the Board of Directors of the corporation.

FIFTH: The names of the incorporators (post-office address of each is No. 525 Main Street, East Orange, New Jersey), and the number and kind of shares subscribed for by each, the aggregate of which is the amount of capital with which this Company shall commence business, are as follows:

| Name | No. of Shares of Preferred Stock | No. of Shares of Common Stock |
|---|---|---|
| James B. Dill | Ten | Ten |
| Albert Sprague Bard | Twenty | Twenty |
| Leighton Calkins | Twenty | Twenty |

C 66        625

SIXTH:   The duration of this Company shall be perpetual.

SEVENTH:   1.   With the assent in writing, or pursuant to the vote of the holders of two-thirds of the preferred stock issued and outstanding, and without the assent or vote of the holders of the common stock, the Directors shall have power from time to time, without limit as to amount, to authorize and cause to be issued the mortgage bonds of the corporation, and, for the purpose of securing the same or other indebtedness of this corporation, to authorize and cause to be executed mortgages and liens upon any or all of the property of this corporation at such time owned or otherwise held, or to be thereafter acquired.  And no mortgage bonds so secured shall be issued or mortgage or similar lien executed without such assent or vote as aforesaid.

2.   With the assent in writing, or pursuant to the vote of the holders of two-thirds of the preferred stock issued and outstanding, and without the assent or vote of the holders of the common stock, the Directors shall have power and authority to sell, assign, transfer or otherwise dispose of the whole property of this corporation on such terms and conditions as the Directors shall deem fit, right and just.

3.   The Board of Directors, in addition to the powers and authorities by statute and by the By-Laws expressly conferred upon them, may exercise all such powers and do all such acts and things as may be exercised or done by the corporation, but subject, nevertheless, to the provisions of the statute, of the charter, and to any regulations that may from time to time be made by the stockholders; provided that no regulations so made shall invalidate any provisions of this charter, or any prior acts of the Directors which would have been valid if such regulations had not been made.

4.   The Company may in its By-Laws confer powers additional to the foregoing upon the Directors, and may prescribe the number necessary to constitute a quorum of its Board of Directors, which number may be less than a majority of the whole number.

5.   The Board of Directors may, by resolution passed by a majority of the whole Board, designate two or more of their number to constitute an Executive Committee, which committee shall for the time being, as provided in said resolution or in the By-Laws of said Company, have and exercise all the powers of the Board of Directors in the management of the business and affairs of the Company, and have power to authorize the seal of the Company to be affixed to all papers which may require it.

6.   The Board of Directors from time to time shall determine whether, and to what extent, and at what times and places, and under what conditions and regulations, the accounts and books of the corporation, or any of them, shall be open to the inspection of the stockholders; and no stockholder shall have any right of inspecting any account or book or document of the corporation, except as conferred by statute or authorized by the Board of Directors or by a resolution of the stockholders.



C 66    626

7. The Company may use and apply its surplus property, earnings or accumulated profits, authorized by law to be reserved, to the creation and maintenance of a surplus fund, or to the purchase and acquisition of property, and to the purchase and acquisition of its own capital stock, and may take the same in payment or satisfaction of any debt due the Company from time to time, to such extent, in such manner and upon such terms as its Board of Directors shall determine; and neither the surplus fund or property, nor the capital stock so purchased and acquired, nor any of its capital stock taken in payment or satisfaction of any debt due the Company, shall be regarded as profits for the purpose of the declaration or payment of dividends unless a majority of the Board of Directors shall otherwise determine.

8. The Board of Directors shall have power to hold its meetings, to have one or more offices, and to keep the books of the Company (except the stock and transfer books), outside of this State, at such places as may be from time to time designated by them.

9. The Board of Directors shall have power without the assent or vote of the stockholders to make, alter, amend and rescind the By-Laws of the corporation and to fix the amount to be reserved as working capital.

The undersigned, for the purpose of forming a corporation in pursuance of an Act of the Legislature of New Jersey, entitled "An Act Concerning Corporations" (revision of 1896), and the various acts amendatory thereof and supplemental thereto, do make, record and file this certificate, and do respectively agree to take the number of shares of stock hereinbefore set forth, and accordingly hereunto set their hands and seals.

Dated East Orange, N. J., November 28, 1898.

In presence of
Duncan T. McLaren

James B. Dill        (L.S.)
Leighton Calkins     (L.S.)
Albert Sprague Bard  (L.S.)

(10c I.R.Stamp Can.)

STATE OF NEW JERSEY  )
COUNTY OF ESSEX      ) ss.:

BE IT REMEMBERED, that on the 28th day of November, A.D., 1898, before me the subscriber personally appeared Duncan T. McLaren, of full age, who being by me duly sworn, on his oath did depose and say that he saw James B. Dill, Leighton Calkins, and Albert Sprague Bard, the persons named in the foregoing certificate sign, seal and deliver the same as their voluntary act and deed, and that the deponent at the same time subscribed his name thereto as a witness of the execution thereof.

R. A. Sanger
Commissioner of Deeds.



C 66       627

Received in the Clerk's Office of the County of
Essex on the twenty eighth day of November, A.D.
1898 and recorded in Book No.15 of Incorporated
Business Companies for said County, page 110.

William O.Kuebler,

Clerk.

ENDORSED:

"FILED NOV 28, 1898,

GEORGE WURTS,

SECRETARY OF STATE."



# State of New Jersey

## Department of State

C 66      628

I **Thomas A. Mathis**, *Secretary of State of the State of New Jersey*, **Do hereby Certify** *that the foregoing is a true copy of* Certificate of Incorporation of "OTIS ELEVATOR COMPANY", as Amended to date,

are
*as the same* xx *taken from and compared with the original* s

Filed November 28,1898, April 13, 1904 and May 14,1930, respectively.

**In Testimony Whereof**, *I have hereunto set my hand and affixed my Official Seal at Trenton this* Eighth *day of* December *A. D. 19* 37.



*Secretary of State*